Good morning and may it please the court. Francesco Valentini for the United States. I would like to reserve three minutes for rebuttal. The wartime suspension of limitations act suspended the statute of limitations in this case, and the district court erred in finding otherwise. One or two events must occur to trigger- Counsel I don't want to interrupt, but I have a kind of a threshold question. When I read the district court opinion, it started with the 1948 statute. It didn't indicate that that was the first time, but that sort of was the beginning of where the court started was after World War II. It didn't seem to reference the 1942 original statute or the amendments that came in 1944. Was that put before the district court? Did you make some of the arguments? Did the government make some of the arguments that they're making to us before the district court on those 1944 amendments? We raised the statute of limitations as the wartime suspension of limitations act as an issue for the court once the motion to dismiss was raised. We didn't raise every sort of sub-argument, but we clearly raised the claim. And I believe as something in the district court, we offered to enlarge our briefing of the statutory history. And I believe that the district court did not find necessary to have the further history. In any event, the claim was raised. No, I understand the claim was raised. I'm not really raising it as much for a waiver question as more I'm wondering why the district court didn't grapple. I found your arguments on the 1944 amendments pretty compelling, and I was sort of wondering why the district court didn't grapple with them at all. But what I'm hearing from you is you may not have raised those specific arguments. You preserved the issue on statute of limitations, but you didn't raise those specific arguments to the district court. For various procedural reasons, not every authority was cited to the district court to answer your question directly. And those authorities are persuasive, as Your Honor just referenced. In the limited time that is available to me today, in fact, I would like to walk the court a little bit through some of those enactments. The statute was first enacted in 1942 at the height of World War II, and it tracked a World War I precursor to that statute. And the statute covered, as enacted in 1942, all offenses that involved fraud against the United States. It did not include the which clause on which the appellee and the district court's theory relies entirely. So there was no plausible war nexus requirement when the statute was first enacted in 1942. To the contrary, in proposing the law, Representative Rankin explained that, and I'm quoting, even offenses common in times when no emergency is enforced may go unpunished because the law enforcement agencies of the government are too busy to make the routine investigations. That means that the scope of the statute as initially enacted did not envision a war nexus requirement. The statute, as Your Honor referenced, was then expanded twice in 1944, months after D-Day, at the height of World War II. That's when the which clause was first enacted, and it was enacted clearly as part of a new clause, the contract clause, that expanded the reach of the statute. And then in 1948, as part of an overall reclassification of Title 18, the statute was—Congress made some stylistic adjustments and some adjustments that made the statute permanent, but did not make any change to the scope of the statute, the scope of the which clause that is relevant here. It continued to modify only the third subclause. And now, I believe, focuses on the 2008 enactment amendments, but those amendments were limited in scope. They only expanded the trigger to include congressional authorizations for the use of military forces, in addition to formal declarations of war. They extended from three to five years, the time after the end of the termination, how Congress, what kind of congressional action or executive action marked the termination of the statute of limitations. None of those amendments in any way affected the text, which is critical here. Counsel, do you know anything more about the history of the UCMJ Section 843? You know when that was enacted? I believe it was enacted in 1950, and then it was recodified in 1956. Okay, and so when it was adopted in 1950, was it adopted in substantially the form that it is now? Yes, the statute at large presented the statute in the form that it is presented now, with a pagination that makes clear that the which clause modifies only the third clause of the Suspension Act. Okay, and did it include the semicolons that separate those three clauses? The version printed in the statute at large does include it, yes. Okay, the version in the statute at large in 1950 does include semicolons? Yes, Your Honor. Okay. If I can also touch a little bit on the purpose of the Act, I think there's been some argument made by the other side that the purpose of the Act did not encompass this type of offense. But the purpose of the Suspension Act is really twofold. And I think the citation to the original 1942 legislative history that you just mentioned points in that direction. There is two goals. One is to preserve and protect the war effort, and one is to protect the purse of the United States and the United States' interests when its resources are naturally distracted by other more pressing events. And the scope of the first two clauses, as we interpret them, are integral to fulfilling the protection of the United States' purse at a time when its attention is diverted to other issues. Counsel, is there any what instances would be covered by F, I'm sorry, yeah, by by paragraph three in the statute that would not be covered by one? Right. So to begin with, sort of a general point, I want to give you some practical examples. But to begin with, of course, the canon against superfluity only comes into play when there is complete overlap, not just when there is redundancies. And so let's get to the just to answer your question, though, I think one example we provide in our brief will be a case in which a contractor defrauds a subcontractor in connection with a war. In that case, that provision, that offense will not fall under the first clause, which is limited to fraud against the United States. Another example one could think of could probably be a price fixing conspiracy in connection with a war related contract that would not be necessarily defrauding, would not have necessarily in all cases defrauding the United States as an essential element as required in the United States versus bridges. It also would not necessarily qualify under the second clause, but it qualifies under the third clause. And as far as I know, in those examples, then you're relying on the fact that clauses one and two refer to the United States, but clause three does not. Correct. Yes, correct. And just as a final example that I could give you, it could be, for instance, a even a violent offense committed by a security contractor in connection with a war that would not be an offense that defrauds the United States. It will not be in connection with the acquisition, disposition, custody or care of a real or personal property in the United States. But it would be in connection with a contract which is related to the war or directly related to the. But your position, just so I'm following, is that even if the conduct falls within one and three, the statute of limitations would not bar it. It would bar it if you it only bars it if the conduct falls only in three and not under one. Correct, I would just answer the question posed by Judge Bybee, which I understood it to to to to ask what what what work is left for a class three to do under our interpretation of the statute. If you're honest, don't have any further question at this time, but I would like to resume. I do. I do have I do have a question. This is Judge Schroeder. I just want to understand the the reach of your argument. Are are we. Are we engaged in the authorized use of of armed forces in Afghanistan now? Yes, Your Honor, we are. There's a pending there's a pending authorization that 2001 authorization of use of military force and none of the events that the statute envisions or identifies as terminating that that authorization have come to pass. Congress specifically clarified in 2008 the type of event that would put the termination. And in this case, there's been no argument that any of the specific actions listed in the statute have occurred. Yeah, so we've been engaged in military operations for the somewhere for the last least 20 years. Yes, under under the meaning of the statute that we are. And one point I want to make, Your Honor, there are substantial, substantial limitations to this. It's just to take your question a little more broadly to the to the statute. And those come from the requirements of Clause one and Clause two, which is a Supreme Court. I see I'm over my time. May I finish my answer? Yeah, absolutely. Answer. Thank you. So there is statutory limitations that come from the substantive requirements reflected in Clause one and in Clause two, such as the fact that a fraud has to be an essential ingredient of the offense and that the fraud has to be pecuniary in nature. There's also constitutional and institutional limits. The due process clause under under Lovasco poses limits on pre indictment delay, independently of the application of the statute. I understand that. So the fraud committed in in in 2002, the statute of out of any military activity? Only to the extent that it falls under one of the three clauses of the right. If it's under Clause one, then there's no if there conceivably could be no statute of limitations at all. That's correct. And that is that is the policy choice of of Congress with the lens of 2021. Perhaps that looks like a policy choice that maybe is not the one that everyone will make today. But the question at this point is whether the interpretation of the session that we offer is overbroad vis a vis the policy choice that Congress did make. When this the statute when the statute was enacted, particularly during World War two, it was wasn't contemplated that we would have these series of of actions all over the world that developed after World War two. So I'm not sure that this was a policy choice, but I understand your position. Thank you for answering. I think if I may add just one final point in 2008, what Congress did amend the statute, though, the 2001 authorization for use of military force had been in place for seven years. And the Iraq surge that just happened years after the beginning of the commencement of that war. Thank you. I'm at any court interpreted the case, the clause of the way that you are interpreting it at that time had not the issue had not yet arisen. OK, thank you. Thank you very much. OK, thank you, counsel. Miss Dodson. Yes, good morning, my name is Deanna Dodson, I'm representing the appellee, Dwayne G. This particular statute, I think, has it has three parts to it. It has a triggering part, which is that you have to either have a declaration of war or an authorization by Congress, which right now we have the two authorizations by Congress that is applicable to this statute. Then you have the statute of limitations, which runs now for five years, but it doesn't start until after the termination of hostilities. What the government is arguing is that only section three, offense three, has the nexus to hostilities. However, the entire statute is dealing with hostilities. First, it starts with a hostility. You have to either have war, a declaration of war or these authorizations. And then the end of these of the termination of these hostilities then starts the statute of limitations running again for the five years. So it states in the in the actual statute itself, it says that the running of statute of limitations is applicable to any offense. And it says one or two or three. And then this which clause comes in, gives the connection, the nexus, as the government is prosecution of the war or directly connected or related with the author's authorization of the armed forces. I don't see how you can claim that. How do you respond to the, I mean, I think if we're reading this, you know, if there weren't these amendments in 1944, I think this would be, you know, a really tough case because you know, there's a lot of conflict, but what is your response to these 1944 amendments where the which clause was specifically adopted, you know, before, before all three categories were in there. And then when the categories changed order, numerical order, the which clause followed the one that it was adopted with. That seems to be pretty good evidence that Congress adopted the which clause only only in conjunction with the third clause. Well, in 1944, you only had two, two offenses, one and two, and two was a contract clause. And that was the end of the clauses. And then the which it shows the connection that you have to have a connection, a nexus to the related the war, or now we have the authorization of war, which was not in 1944. But it said it has to be related to the prosecution of the present war. It still requires that you have to have some nexus to these hostilities. You just can't separate. Counsel, what do you what do you do with with the UCMJ section 843? With the with the USMJ, it's how they've designated their particular, they've separated each paragraph where they're not separated in in the actual. Right. But they're in in in your section, which is what, 3257, 3287, 3287, they're separated. The clauses are separated by commas here. They are separated by semicolons, but it's otherwise identical. I mean, it's word for word. Are you telling us that because they included semicolons, but it adopted word for word, they adopted a different statute than the one that they adopted here? No, I'm not saying that. I think that still the which clause is is read to say that that you have to have the connection. You have to have the next. OK, I just want to make sure I understand your argument. Are you telling me that the which clause in 10 USC 843 F3 applies to F1 and F2? Are you talking about the I'm talking about 10 USC section 843, I'm talking about the UCMJ provision. OK, does the which clause. Apply to F1 and F2. Yes, I think it does, your honor, possibly because you have to show a nexus. If you don't have a nexus, how can you how can you connect the war with the termination of the hostilities that's in place? And then you have to have it related to those. Otherwise, you can just have any fraud or any property acquisition. But counsel, where they're separated, I mean, to judge by these point, I mean, where they're separated like that and the which clause is only included in number three. I mean, your argument, I think for your argument to to be correct, the which clause would have to like follow in a paragraph after one, two and three. But where it's only included in paragraph three and it's not included in paragraph two or one, I don't understand how your argument flows. Well, then how can you have in the WSLA, how can you have the nexus to hostilities requirement if it only applies to contracts, because in in the case that the government argued in Granger, that was a fraud case that would be under category one. Correct. And they found that it had to be connected to it had to be specifically related to the hostilities. And then because they had they had charges in forty five, forty six and forty seven. And they said the forty seven did not qualify because that was after the termination of hostilities. So that that's very important that there's a link to the hostilities. So if you take the which clause out completely, then then what are you saying that there is no relationship at all? You can't which clauses is applied to all to be exactly what they've done. I mean, the the WSLA is is admittedly more ambiguous. But if you compare it to the the Uniform Code of Military Justice, this seems to be absolutely clear. I just if we if the WSLA were written as the Uniform Code of Military Justice was, I don't know how your argument could stand unless there was something about the 2008 amendment that changed the WSLA. Because I do you have an argument that the 2008 amendment may have amended it in such a way that the which clause it makes a stronger position that the which clause applies to all three? Well, I think the one thing that you can say is why the why the 2008 amendment came in and it was to make under the legislative history that Senator Leahy proposed, he said it was to make current laws, suspending statute of limitations during wartime applicable to the ongoing conflicts in Iraq and Afghanistan. Well, if you're only going to have contract offenses, then what good is even listing the first two one and two if it's not going to apply? So you have to have that nexus to the war because that's what the whole that's a whole intent of this wartime statute to extend the limitations period. So the government would have more time to find all these charges. I mean, all these offenses, not just the third one. And they all have to be related to this wartime statute, which means it has to be related to the hostilities. Otherwise, what's the point of the statute? If you take out one and two and you only have three, that's that's exactly that's what you're actually saying is only three has to relate to the hostilities. But in actuality, they all have to relate. Otherwise, why have the Declaration of War or these authorizations and why have the termination related to the termination of these hostilities? That's the start of the new statute of limitation period. If it's only related to three, then one and two are almost irrelevant because it has no meaning to the statute. You have to have all of that together. It has to relate. You have to have some relationship to the hostilities in order for the extension of the statute of limitation. You just can't have it to contracts. And in the Granger case, that was fraud. And they found that it was applicable and only under the 45 and 46 counts because it happened before the termination and it happened during after the Declaration of War. And so you have to make that connection that it has to have a nexus to the hostilities. But can you go on the Granger case? Maybe I didn't read it closely, but I didn't see that it was specifically fraud versus contract. How do you get that it was specifically fraud and not contract? Because it was violations of the False Claims Act. They were making fraudulent claims. And it says right here in the claims for money or property involving the element of deceit, which is the earmark of fraud. It's right there, it wasn't contracts, it was fraud. They were making claims, false claims to the government. And that that's the case that the government was relying on was Granger. Yeah. And they and they said that. That it's the specific language to war contracts is what the government quoted, but actually it's stated in that thing, it said the running in Granger said the running of any existing statute of limitations applicable to any offense, one involving fraud, the United States or two committee in connection with the performance of any contract, which that was all there was then related to the prosecution of the of the present war. So they're relating it to you have to have some nexus. Otherwise, why have this wartime statute if it doesn't have some nexus to what the hostilities are? You just can't eliminate it and say it only applies to contracts. It applies also to all the other two claims in the present statute. OK. And I don't see any other questions, so counsel, your your time is done, but thank you. It's been helpful. Mr. Valenti, we'll give you we'll give you a minute for rebuttal. Thank you very much. I would like to make three points very briefly. Nishi Nishi's counsel just referenced a couple of times in relation to the hostilities. The statute, as we interpret, does have does require a relation to the hostilities. It's just a temporal relations. No one questions that the trigger and the end point of the suspensions is determined by the hostilities, by the congressional authorization for the use of military force. There is a connection. It just doesn't have to be a substantive connection for each of the three clauses. Second, with respect to Granger, Granger involved false claims made to a government corporation that had nothing to do with a war effort. There were wool purchases and the defendants in those case said and argued squarely to the Supreme Court. These purchases are nothing to do with a war effort. The status suspension does not apply. And the Supreme Court found did not address that specific argument explicitly, but it found that the statute of limitation applies. So it's untenable, we think, to rely on Granger to support the police position in this case. And finally, with respect to the 2008 amendments, one important point that the Supreme Court made in KBR is that Congress does not ordinarily hide fundamental changes to the scope of a statute in, quote, subtle moves. And in this case, the district court's theory and issues theory and appeal appears to turn entirely on either legislative history or other moves that have no funding, no grounding in the in the tax, in the history or in the context of the statute. The court doesn't have any. Yeah. Yeah. Was the Article 43 of the Code of Military Justice, was it was it adopted as a separate standalone provision or was it part of the entire code? Just out of curiosity, Your Honor, I believe it was part of the entire Uniform Code of Military Justice. Yeah, that's my understanding that when it was first enacted in 1950, it was part of the overall enactment. OK, thank you. Thank you very much. Unless the court has any further questions, we will ask the court to reverse the judgment and re-amend for further proceedings. Thank you, counsel. Thank you to both counsel for your arguments in this case. The case is now submitted. We'll move on to our second case for argument today. Francine Huerta versus Andrew M. Case number 19-15402.
judges: Schroeder, Bybee, Nelson